Michael D. Sirota – NJ Attorney ID # 014321986
Cameron A. Welch – NJ Attorney ID # 031262005
**COLE SCHOTZ P.C.**
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
201-489-3000
201-489-1536  Facsimile
Email: msirota@coleschotz.com
Email: cwelch@coleschotz.com

-and -

Thomas A. Clare, P.C. (*pro hac vice* pending)
Daniel P. Watkins (*pro hac vice* pending)
**CLARE LOCKE LLP**
10 Prince Street
Alexandria, VA 22314
Telephone: (202) 628-7400
Email: tom@clarelocke.com
Email: daniel@clarelocke.com

*Attorneys for Plaintiff, Andrew P. Napolitano*

| ANDREW P. NAPOLITANO,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES CORBISHLEY,<br><br>Defendant. | UNITED STATES DISTRICT COURT<br>FOR THE DISTRICT OF NEW JERSEY<br>CIVIL ACTION NO.<br><br>Civil Action<br><br>**COMPLAINT** |
|---|---|

Plaintiff Andrew P. Napolitano ("Former Judge Napolitano"), by way of Complaint against

Defendant Charles Corbishley (" Defendant"), alleges and states as follows:

## NATURE OF THE ACTION

1.      Former Judge Andrew P. Napolitano files this action to vindicate his good name

after Defendant executed his extortionate scheme and defamatory smear campaign to damage

permanently Former Judge Napolitano's reputation with fabricated and baseless accusations of

2

sexual misconduct that supposedly occurred more than thirty years in the past.

2. Defendant is a convicted felon with a criminal record that spans three decades. Although he made a run-of-the-mill appearance in Judge Napolitano's court in the late 1980s as a defendant in a criminal proceeding, Defendant has now concocted a false story that his then-criminal lawyer (now conveniently deceased) supposedly set up an arrangement whereby Defendant received lenient treatment from Former Judge Napolitano in exchange for a sexual favor. Nothing could be further from the truth.

3. Former Judge Napolitano has never had any private, *ex parte* meeting with Defendant; further, he never engaged in any sort of sexual contact with Defendant, and Former Judge Napolitano never made any agreement – or otherwise had any communications – to impose a lesser sentence for Defendant in exchange for any favor or services. Former Judge Napolitano certainly never committed the sexual assault Defendant falsely contends transpired decades ago.

4. On September 11, 2020, after a failed months long campaign to extort a settlement, Defendant filed a lawsuit against Former Judge Napolitano setting forth his fabricated sexual assault story in graphic detail and demanding $10 million. Defendant filed his sham lawsuit in an entirely improper venue, the Southern District of New York, in which none of the alleged events are purported to have transpired and in which neither Defendant nor Former Judge Napolitano reside. Presumably, Defendant chose this improper venue – the nation's largest media market – to maximize the exposure his lawsuit would receive.

5. Even though he knew the accusations were demonstrably false, Defendant, both directly and through his attorneys, repeated his fabricated claims by publicizing the scandalous and false sexual assault allegations to numerous media outlets in an attempt to garner publicity for himself and his suit to coerce and oppress Former Judge Napolitano in furtherance of his

extortionate scheme. At the same time, Defendant repeated his false story on multiple occasions, both before and after the filing of suit, to third parties, including New Jersey residents.

6. Former Judge Napolitano brings this action in the correct venue to set the record straight, to vindicate his rights under civil law, to restore his reputation as a distinguished jurist, and to establish Defendant's liability for the harm that his false and defamatory statements have caused. Former Judge Napolitano seeks an award of compensatory damages for the reputational and economic harm caused by Defendant's false accusations and, given the willful and malicious nature of Defendant's conduct in knowingly publishing defamatory falsehoods about him, Former Judge Napolitano also seeks an award of punitive damages.

## PARTIES

7. Former Judge Napolitano is a resident of, and is domiciled in, Sussex County, New Jersey. Former Judge Napolitano previously served as a judge for the Superior Court of New Jersey in Bergen County, New Jersey.

8. Defendant is a resident of South Carolina.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiff is a citizen of the State of New Jersey, Defendant is a citizen of another state, and the amount in controversy exceeds $75,000.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted allegedly occurred in this District. In fact, the entirety of Defendant's concocted story purportedly took place in Bergen County, New Jersey.

11. This Court has personal jurisdiction over Defendant because Defendant expressly aimed and purposefully directed his defamatory statements – which are based on conduct that

supposedly took place in Bergen County, New Jersey – at Former Judge Napolitano, a New Jersey resident, knowing that the brunt of the injury would be felt in New Jersey. Among other affirmative acts, Defendant launched his campaign of extortion and defamation by sending a demand letter and proposed verified complaint, intended for filing in the Superior Court of New Jersey, Bergen County, to Former Judge Napolitano at his New Jersey residence.

## FACTUAL ALLEGATIONS

12. Defendant's campaign against Former Judge Napolitano is almost a year in the making. Long before filing suit against Former Judge Napolitano, Defendant hired his attorneys and agents, Jon Norinsberg and Bennitta Joseph, to serve as his legal counsel through the law firm of Joseph & Norinsberg, LLC.

13. Even though Defendant knew that his accusations were completely false, and that Former Judge Napolitano had never acted improperly towards him, he set out to extort the Former Judge by threatening to publicize this fabulist account of sexual misconduct.

14. Defendant directed his agents and lawyers to send an extortionate demand letter to Former Judge Napolitano on December 2, 2019. This letter included a draft *verified* complaint asserting false accusations of sexual misconduct and corruption against Former Judge Napolitano. The verified complaint even went so far as to falsely insinuate that Defendant was a juvenile at the time of the alleged incident, even though available public records clearly demonstrate that Defendant was a twenty (20) year-old man when he appeared in Court before then-Judge Napolitano. That extortion demand and verified Complaint (the "Original Complaint") are attached as **Exhibit 1** and incorporated herein by reference.

15. After receiving Defendant's extortion demand, Former Judge Napolitano retained counsel who sent a letter to Defendant's counsel on January 16, 2020, demanding that Defendant retract his defamatory statements. The January 16, 2020 letter is attached as **Exhibit 2** and

incorporated herein by reference. The January 16, 2020 letter provided documentary evidence that confirmed the impossibility of Defendant's fabricated claims.

16. One of those pieces of evidence was the fact that at the time Defendant claims his fabricated tale occurred, Former Judge Napolitano did not live in a "house" with a "driveway" that could have been shoveled, and there was no "out back" where the alleged assault could have occurred. Former Judge Napolitano lived on the 26th floor of a condominium building in Hackensack, New Jersey.

17. Incredibly, even though Defendant, who resided in Hackensack, New Jersey at all times relevant to the fabricated allegations, could not identify the address of the home, or even the street, on which this incident that has left him so scarred purportedly occurred, Defendant did not abandon his extortionate scheme and retract his defamatory statements.

18. Instead, Defendant chose to recklessly disregard the contents of January 16, 2020 letter and refused to withdraw the Complaint. Defendant pivoted to a new allegation that the act occurred at an unidentified home in Hackensack, New Jersey that was "owned/leased/rented and/or borrowed" by Former Judge Napolitano.

19. After Former Judge Napolitano refused to succumb to his extortionate scheme, throughout the Spring of 2020 Defendant contacted his former associates, including two New Jersey residents, and recounted the fabricated tale to them – a story Defendant had conspicuously never mentioned in over thirty (30) years.

20. On September 11, 2020, Defendant filed a baseless lawsuit alleging that he had been sexually abused by Former Judge Napolitano. *See Charles Corbishley v. Andrew Napolitano*, Case No. 1:20-cv-07445 (Sep. 11, 2020 S.D.N.Y.). That lawsuit was improperly filed in the Southern District of New York based on a false allegation that Former Judge Napolitano resides

in the City, County and State of New York.[1]

21. Defendant was forced to make even more substantive changes to his accusations in the complaint he ultimately filed in order to continue his scheme. In its latest iteration, the current complaint changes the alleged location of the supposed sexual assault from Former Judge Napolitano's residence to a home that was "owned/leased/rented and/or borrowed" by Former Judge Napolitano "and/or Robert Hollis [Defendant's deceased criminal defense lawyer], so as to arrange for a clandestine location where Napolitano could meet privately with Corbishley."

22. In the Original Complaint, Defendant claimed that his attorney arranged the "private, *ex parte*, meeting with Former Judge Napolitano at "the Napolitano residence," and that he went to Former Judge Napolitano's "house," where he was asked to "go out back" to "shovel the driveway." Defendant claimed this "out back" was where the assault took place.

23. Thus, even though Defendant has had actual knowledge that his claims were pure fiction, and was put on further written notice of that claim-defeating fact and supporting documentary evidence, Defendant doubled down on his false accusations and filed a sham lawsuit to inflict further damage to Former Judge Napolitano's reputation.

24. To be clear, Defendant transmitted the Original Complaint and subsequently filed his sham-pleading in the Southern District of New York in bad faith and for improper purposes. Specifically, his false complaints were intended to harass, coerce and oppress Former Judge Napolitano, cause malicious injury, damage his reputation, and extort him into paying millions in "hush money" demanded by Defendant. Former Judge Napolitano refuses to be extorted.

25. The claims set forth in Defendant's Original Complaint and his sham-pleading

---

[1] Contemporaneously with the filing of this action, Former Judge Napolitano will file a motion in that action to transfer venue to this District, where it should have been filed in the first instance given that all of the events alleged in that action purportedly occurred in this District and Former Judge Napolitano resides in this District.

60509/0001-21283004v1

Southern District of New York Complaint are objectively meritless, completely baseless as a matter of law, and Defendant has no reasonable expectation, whatsoever, that he will secure favorable relief through the judicial process for claims he knows to be false.  Instead, he is simply seeking to use fear of public ridicule, coercion and oppression to extort Former Judge Napolitano.

26. Both before and after filing suit against Former Judge Napolitano, in September of 2020, Defendant, through his agents and lawyers, repeated the incendiary accusations in coordinated press releases and related statements to journalists and the public in an unashamed attempt to try his case in the court of public opinion before Former Judge Napolitano even had a chance to use the judicial process to vindicate his rights. Such actions represented a malicious abuse of process in so far as Defendant used his sham-pleading, and the legal process, to further his extortionate efforts and media campaign.

27. Defendant knew that these were false statements but nonetheless published them to obtain publicity and leverage and cause even more irreparable harm to Former Judge Napolitano's reputation.

28. By filing his false claims against Former Judge Napolitano and publicizing the allegations he fabricated, Defendant, through his agents and lawyers, swiftly mobilized a media firestorm against Former Judge Napolitano.  Hundreds of thousands of individuals read the false allegations and this caused irreparable damage to Former Judge Napolitano's reputation.

29. Defendant knew his smear campaign and extortion scheme against Former Judge Napolitano was completely baseless, but he intentionally disregarded the truth to continue in his attempt to coerce Former Judge Napolitano into paying him to go away.

**COUNT ONE**
**(Defamation – *per se*)**

30. Former Judge Napolitano repeats and realleges the allegations contained in the preceding paragraphs as if stated fully herein.

31.     Defendant published defamatory statements of fact of and concerning Former Judge Napolitano, including but not limited to false accusations that Former Judge Napolitano had:

- *Conspired with "Hollis, so as to arrange for a clandestine location" for the purpose of "sexually assaulting, sexually abusing, and/or having sexual contact" with Defendant.*
- *"[F]orced [Defendant] to perform fellatio."*
- *"[F]orcibly sodomiz[ed] [Defendant]."*
- *"[I]mpose[d] a lighter sentence on [Defendant]" and showed "improper preferential treatment toward" Defendant because Judge Napolitano "was attempting to create goodwill with [Defendant], and thereby ensure that [Defendant] would remain silent about Napolitano's sexual assault of him."*
- *"[R]ecently reached out to law enforcement authorities and made completely false criminal accusations against accusations against" Defendant that were "outright fabrications."*
- *"Attempt[ed] to harass and intimidate" Defendant "and one of [his] witnesses."*

32.     Defendant made these statements in his sham complaint that he filed in the Southern District of New York.

33.     Additionally, Defendant made these statements to his friends, acquaintances and family members.  Defendant repeated these statements in press releases that he caused to be issued to the public in connection with his smear campaign against Former Judge Napolitano.

34.     In September of 2020, Defendant made the following statements, through his counsel and agents, to members of the press and the public:

*"Judge Napolitano perverted the enormous judicial power that we gave him to uphold the law, when he used his judicial authority to sexually assault Mr. Corbishley. Further, Napolitano's recent use of his judicial power and influence to intimidate Mr. Corbishley into silence by fabricating criminal charges against him, reveal nothing has changed. Judge Napolitano will not hesitate to use his power and influence to intimidate people he perceives as powerless when it satisfies his personal agenda."*

*"For over 30 years, [Defendant] has suffered tremendous physical and emotional distress because of Judge Napolitano's abhorrent actions."*

35.     In various communications throughout 2020 with the media, friends, and family members, Defendant falsely alleged, in words or in substance, that Former Judge Napolitano had:

8

- *"fabricated false charges"* against Defendant.
- *"sexually assaulted and battered"* him.
- *"orchestrated and carried out an unlawful scheme with his former defense counsel to exchange clemency for sexual favors."*
- *"intentionally caused him to suffer severe pain and emotional distress."*
- *"forcibly sodomized [Defendant]."*

36. All of these statements are completely false and without merit.

37. Defendant never had any *ex parte* meeting with Former Judge Napolitano, Former Judge Napolitano never sexually assaulted him, and Former Judge Napolitano never conspired with Defendant's criminal defense counsel. Defendant was not even a minor when the alleged events occurred, but rather a twenty (20) year-old man. That Defendant would attempt to associate his fabricated story of alleged abuse of a career criminal with child victimization is an unconscionable affront to real victims of such acts.

38. Former Judge Napolitano never made false accusations against Defendant, and he never intimidated, harassed, or otherwise acted improperly towards anyone.

39. At all times relevant, Defendant knew that these defamatory statements were completely false and baseless. Still, Defendant published the statements with actual malice and with the specific intent to harass Former Judge Napolitano, to pressure him into paying for the made-up claims, and to subvert this legal process.

40. Defendant has published these defamatory statements to multiple parties knowing that they would damage Former Judge Napolitano's reputation and professional standing.

41. These defamatory statements have permanently maligned Former Judge Napolitano's formerly pristine reputation—which he has spent decades building—as a highly regarded lawyer and respected jurist.

42. These statements are defamatory *per se* because they falsely accuse Former Judge Napolitano of corruption in the performance of his public duties as a Superior Court

Judge. Further, they falsely state that Former Judge Napolitano has committed criminal misconduct, and they affect him in his business, trade, and profession.

43. Defendant has no applicable privilege or legal authorization to make these false and defamatory statements, or if he did, he abused it.

44. Defendant made these false and defamatory statements intentionally, willfully, maliciously, and in conscious disregard of Former Judge Napolitano's rights and reputation and of the truth.

45. Defendant acted with actual malice, showing intentional and reckless disregard for the falsity of his statements about Former Judge Napolitano. Defendant made his defamatory accusations with the intent to harm, and out of hostility toward, Former Judge Napolitano.

46. As a direct and foreseeable result of Defendant's false and defamatory statements, Former Judge Napolitano's professional standing in relation to his business and trade has been substantially impugned.

47. As a direct and foreseeable result of Defendant's defamatory statements, Former Judge Napolitano's relationships with community members, peers, acquaintances, coworkers, readers, and friends have been damaged and destroyed.

48. As a direct and foreseeable result of Defendant's defamatory statements, Former Judge Napolitano has been exposed to public hatred, contempt, and ridicule.

49. As a direct and foreseeable result of Defendant's false and defamatory statements, Former Judge Napolitano has been forced to make substantial expenditures of money to remedy the defamation and suffered other economic and special damages.

50. In view of the foregoing, Former Judge Napolitano is entitled to actual, presumed, punitive, and other damages in an amount to be proven at trial.

## DEFENDANT'S CONDUCT WARRANTS PUNITIVE DAMAGES

51. Former Judge Napolitano repeats and realleges each of the foregoing paragraphs as if set forth fully herein.

52. Defendant's conduct warrants the imposition of punitive damages. The factors justifying punitive damages include, at a minimum, the following:

 a. Defendant ignored information available to him that rebutted his false statements;

 b. Defendant acted with knowledge that his statements were false;

 c. Defendant deliberately published, and caused others to publish, statements they he knew to be false because Defendant wanted to discredit Former Judge Napolitano and extort him for a financial payout;

 d. Defendant knew that publishing such incendiary claims would have a damaging impact on Former Judge Napolitano; and

 e. Even after Former Judge Napolitano directed Defendant to indisputable evidence showing that Defendant's statements are false, Defendant refused to retract his false statements.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter an award in Former Judge Napolitano's favor, and against Defendant, as follows:

 (1) awarding Former Judge Napolitano compensatory damages in an amount to be determined;

 (2) awarding Former Judge Napolitano punitive damages in an amount to be determined;

 (3) awarding Former Judge Napolitano all expenses and costs, including attorneys' fees; and

 (4) such other and further relief as the Court deems appropriate.

(SIGNATURE PAGE FOLLOWS)

11

Dated: September 15, 2020

Respectfully Submitted,

*/s Michael D. Sirota*
Michael D. Sirota – Atty ID # 014321986
Cameron A. Welch – Atty ID # 031262005
COLE SCHOTZ P.C.
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
Telephone: (201) 489-3000
Email: msirota@coleschotz.com
Email: cwelch@coleschotz.com

Thomas A. Clare, P.C. (*pro hac vice* pending)
Daniel P. Watkins (*pro hac vice* pending)
CLARE LOCKE LLP
10 Prince Street
Alexandria, VA 22314
Telephone: (202) 628-7400
Email: tom@clarelocke.com
Email: daniel@clarelocke.com
*Attorneys for Plaintiff,*
*Andrew P. Napolitano*